**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JESUS LEYVA, on behalf of himself and all other members of the general public similarly situated,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>MEDLINE INDUSTRIES INC., a California corporation,<br>*Defendant-Appellee*. | No. 11-56849<br><br>D.C. No.<br>5:11-cv-00164-RGK-MAN<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
December 7, 2012—Pasadena, California

Filed May 28, 2013

Before: Harry Pregerson, Richard A. Paez,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Pregerson

## SUMMARY[*]

### Class Certification

The panel reversed the district court's order denying class certification, and remanded with directions for the district court to enter an order granting the motion for class certification where plaintiffs sought to represent 538 employees of Medline Industries, Inc., and alleged violations of California's labor laws.

The panel held that the district court applied the wrong legal standard and abused its discretion when it denied class certification on the grounds that damages calculations would be individual. The panel also held that the district court abused its discretion by finding that the class would be unmanageable despite the record's demonstration to the contrary.

### COUNSEL

David M. deRubertis (argued) and Kimberly Y. Higgins, The deRubertis Law Firm, Studio City, California; N. Nick Ebrahimian and Jordan Bello, Lavi & Ebrahimian LLP, Beverly Hills, California, for Plaintiff-Appellant.

Steven A. Groode (argued) and Matthew J. Sharbaugh, Littler Mendelson, P.C., Los Angeles, California, for Defendant-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

PREGERSON, Circuit Judge:

Plaintiff-Appellant Jesus Leyva appeals the district court's denial of class certification. Plaintiff seeks to represent approximately 538 employees of Medline Industries, Inc. (Medline). The complaint asserts claims against Medline for violating California labor laws.

## I. Allegations of Putative Class Members

Medline manufactures and delivers medical products. The putative class members are current and former hourly employees in Medline's three California distribution warehouses. Because Medline's warehouse employees earn low wages, the amount each could claim for unpaid wages is relatively low—for example, Plaintiff's individual claim is for less than $10,000.

Plaintiff alleges that Medline violated the California Labor Code, California Industrial Commission Wage Order 1-2001, and California's Unfair Business Practices Law. Plaintiff seeks to certify separate sub-classes to pursue the following four claims[1]:

1. Rounding violation: Medline rounded its hourly employees' start times in twenty-nine minute increments. For example, workers who clocked-in between 7:31 a.m. and

---

[1] Medline removed this case to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Medline demonstrated in its removal notice that its liability exposure to putative class members' claims exceeds five million dollars.

8:00 a.m. would be paid only from 8:00 a.m. onward even though they began work beforehand.  Putative class members would clock-in before their scheduled start times because they had to complete tasks such as inspecting their machines and picking up scanners before they could begin their duties. Plaintiff alleges that the rounding practices resulted in employees performing unpaid work before their scheduled start times, in violation of California Labor Code §§ 510 and 1197, and that they are entitled to compensation pursuant to California Labor Code §§ 1194, 1194.2, and 1197.1.

2. Bonus violation:    Medline allegedly excluded nondiscretionary bonuses from employees' overtime rates, thus lowering overtime pay.  Plaintiff claims that this practice violated California law, citing to *Marin et al. v. Costco Wholesale Corp.*, 169 Cal. App. 4th 804, 807 (2008).

3.  Waiting time penalties:  Plaintiff alleges that because of the time rounding and bonus violations, Medline owes its employees penalties under California Labor Code § 203, which provides that an employer who willfully fails to pay any wages due to a terminated employee owes waiting time penalties.

4.  Wage statement penalties:    Plaintiff alleges that because of the rounding and bonus violations, Medline's payroll records did not accurately record the hours employees worked and the wages they earned.  California Labor Code § 226(e)(1) provides that an employee can recover up to four thousand dollars in damages, and additional civil penalties, for such violations.

## II. Class Certification Requirements and the District Court's Ruling

To be certified, the putative class and sub-classes must meet the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Moreover, the proposed class must satisfy the requirements of Rule 23(b), which defines three different types of classes.  Plaintiff argues that the proposed sub-classes meet the requirements of Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The district court found that "[t]he putative classes appear to meet the requisites of Rule 23(a)," including the "rigorous" commonality standard established in *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011) (requiring that class members' claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").  However, the district court nonetheless denied class certification, holding that the putative class and sub-classes did not meet the requirements of Rule 23(b)(3) for two reasons.  First, the district court concluded that common questions did not predominate over individual questions because "although Plaintiff appears to have established that common questions exist with respect to Defendant's liability under state law, the damages inquiry will be highly individualized."  The district court explained:

> Each of the 500 putative class members are allegedly entitled to different damage awards for being 'short-changed' by the rounding policy and/or the bonus policy. Because evaluating each putative class member's claims would require fact-specific, individualized inquiries into the amount of pay to which he or she was entitled, the Court finds that individual questions predominate over commons questions in this case. Therefore, the proposed classes are not sufficiently cohesive to warrant adjudication by representation.

Second, the district court concluded that because of the size of the class, under Rule 23(b)(3) "alternative methods for resolving this dispute are superior because of the likely difficulties in managing this case as a class action." The district court did not explain which methods would be superior. Instead, the court reasoned that "if these four classes were certified, the Court would need to determine the extent to which each putative class member lost wages and, consequently, suffered damages. Since there are more than 500 putative class members, this process would tax the Court's resources." The court also noted that it would have to determine "which of several bonuses offered by Medline to different putative class members were 'nondicretionary'" and that "employees within the bonus group each received different bonuses at different pay periods."

## III.    The District Court Abused its Discretion

We review the district court's denial of class certification for abuse of discretion. *Knight v. Kenai Peninsula Borough*

*Sch. Dist.*, 131 F.3d 807, 816 (9th Cir. 1997).  We apply a two-step test to determine whether a district court abused its discretion.  *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009).  First, we "look to whether the trial court identified and applied the correct legal rule to the relief requested.  Second, we look to whether the trial court's resolution of the motion resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record."  *Id.*

We find that the district court abused its discretion in concluding that (1) individual questions predominated over common questions, and (2) class certification was not superior to other means of resolving the dispute.

## A.  Predominance of Common Questions

The district court applied the wrong legal standard by concluding that individual questions predominate over common questions.  The only individualized factor that the district court identified was the amount of pay owed.  "In this circuit, however, damage calculations alone cannot defeat certification."  *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010).

The district court denied certification because for each sub-class "the damages inquiry will be highly individualized."  But damages determinations are individual in nearly all wage-and-hour class actions.  *Brinker Rest. Corp. v. Superior Court*, 273 P.3d 513, 546 (Cal. 2012) ("In almost every class action, factual determinations of damages to individual class members must be made.  Still we know of no case where this has prevented a court from aiding the class to obtain its just restitution.  Indeed, to decertify a class on

the issue of damages or restitution may well be effectively to sound the death-knell of the class action device.") (internal citation and quotation marks omitted). Thus, "[t]he amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975); *see also Yokoyama*, 594 F.3d at 1089 ("The potential existence of individualized damage assessments . . . does not detract from the action's suitability for class certification."). In deciding otherwise, the district court abused its discretion by applying the wrong legal standard. *See Hinkson*, 585 F.3d at 1263.

Indeed, the Supreme Court clarified in *Dukes* that "individualized monetary claims belong in Rule 23(b)(3)." 131 S. Ct. at 2558. Thus, the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3). It is true that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1435 (2013) ("The first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*.") (internal quotation marks omitted). In *Comcast*, the Supreme Court reversed an order granting class certification because the plaintiffs relied on a regression model that "did not isolate damages resulting from any one theory of antitrust impact." *Id.* at 1431. The Court concluded that "a model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory." *Id.* at 1433.

Here, unlike in *Comcast*, if putative class members prove Medline's liability, damages will be calculated based on the wages each employee lost due to Medline's unlawful

practices.    In the record, Plaintiff included deposition testimony of Medline's director of payroll operations, and Medline's Notice of Removal.  Those documents show that Medline's computerized payroll and time-keeping database would enable the court to accurately calculate damages and related penalties for each claim.  For example, in its removal notice, Medline used its electronic database to separately calculate its exposure for each putative class member's claim.  The removal notice states that "to determine the potential amount in controversy with regard to Plaintiff's minimum wage off-the-clock claim, Medline multiplied each employee's hourly rate by the number of workweeks he/she was employed by Medline during the applicable period . . . ."  Medline listed the amount in controversy for each individual claim and totaled the exposure on all the claims, calculating a total amount in controversy of $5,934,761.  Medline's removal notice thus demonstrates that damages could feasibly and efficiently be calculated once the common liability questions are adjudicated.

## B.  Superiority of Class Adjudication

The district court also applied the wrong legal standard when it concluded that a class action was not the superior method for resolving the putative class members' claims. The district court acknowledged that certification was superior when considering three of the four Rule 23(b)(3) factors—the class members' interests in controlling litigation, the nature of litigation, and the desirability of concentrating the litigation of the claims—but denied class certification based on manageability concerns.

The district court incorrectly held that class certification was not the superior method of adjudication because of the

difficulty of managing the approximately 500 member class and determining "the extent to which each putative class member lost wages, and, consequently, suffered damages." The district court again abused its discretion when it based its manageability concerns on the need to individually calculate damages. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law . . . ."); *Blackie*, 524 F.2d at 905 (holding that the need to determine individualized damages does not defeat class certification).

Moreover, the district court's reasoning regarding manageability of the class action is "implausible" under *Hinkson*'s second step. 585 F.3d at 1263. The district court concluded that class certification is not the superior method of adjudication but did not suggest any other means for putative class members to adjudicate their claims. Indeed, it appears that none exist.

The California Labor Code protects all workers regardless of their immigration status or financial resources. California Labor Code § 1171.5; *see also Reyes v. Van Elk, Ltd.*, 56 Cal. Rptr. 3d 68, 78 (Ct. App. 2007). In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims. Thus, class certification is also the superior method of adjudication. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) ("If plaintiffs cannot proceed as a class, some—perhaps most—will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover.").

The district court's denial of class certification because of manageability concerns also lacks "support in inferences that may be drawn from the facts in the record." *See Hinkson*, 585 F.3d at 1262 (internal citations and quotation marks omitted).    The putative class and proposed sub-classes contain approximately 538 people, and courts routinely certify larger and more complex classes. *See, e.g.*, *Ortega v. J.B. Hunt Transp., Inc.*, 258 F.R.D. 361, 364 (C.D. Cal. 2009) (certifying class of "nearly 6,000" employees who alleged that their employer failed to pay minimum wages, provide proper meal and rest periods, provide accurate wage statements, or provide wages due upon termination); *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 402 (C.D. Cal. 2008) (certifying class of 15,000 employees who alleged that their employer's policies violated state reporting time and split-shift regulations).

Moreover, as noted above, Medline's own documents demonstrate the feasibility of calculating damages in this case.  Medline's electronic payroll records contain much of the data needed to calculate damages.  In its notice removing the case from state to federal court, Medline calculated the damages exposure through a review of company payroll records.  Through a query of the computerized timekeeping database, Medline's director of payroll operations calculated the amount of money plaintiff Leyva had lost due to Medline's rounding policy.  The payroll director said the calculation took him "probably an hour and a half," and that he could repeat the process for the entire class.  The district court, or a special master appointed under Federal Rule of Civil Procedure 53, could use a similar method to calculate damages once the court adjudicates liability.  Thus, the district court abused its discretion by ignoring the database's potential to alleviate the burden of determining damages.

**IV.     Conclusion**

The district court applied the wrong legal standard and abused its discretion when it denied class certification on the grounds that damages calculations would be individual.  The court also abused its discretion by finding that the class would be unmanageable despite the record's demonstration to the contrary.  The district court's order denying class certification is **REVERSED** and **REMANDED** with directions to the district court to enter an order granting Plaintiff's motion for class certification.  Plaintiff is entitled to costs on appeal.