**DANIEL F., et al., Plaintiffs,**

v.

**BLUE SHIELD OF CALIFORNIA, et al., Defendants.**

No. C 09–2037 PJH

United States District Court, N.D. California.

Signed August 11, 2014

Brian S. King, Nicole T. Durrant, Brian S. King, Attorney at Law, Salt Lake City, UT, David M. Lilienstein, Esq., DL Law Group, San Francisco, CA, for Plaintiffs.

Craig S. Bloomgarden, Manatt, Phelps & Phillips LLP, Los Angeles, CA, for Defendants.

### ORDER DENYING MOTION FOR CLASS CERTIFICATION

PHYLLIS J. HAMILTON, United States District Judge

Plaintiffs' motion for class certification came on for hearing before this court on July 9, 2014. Plaintiffs appeared by their counsel Brian S. King, David M. Lilienstein, and Robert Wing, and defendant Blue Shield of California appeared by its counsel Craig S. Bloomgarden and Gregory Pimstone. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby DENIES the motion.

### BACKGROUND

Plaintiffs Daniel F. and Shan O. are the parents of plaintiff Geoffrey F. At the time of the events alleged in the complaint, plaintiffs were participants/beneficiaries of the Ogdemli/Feldman Design Group Benefit Plan ("the Plan"), provided through the employment of Daniel F. and Shan O. Geoffrey was a minor for part of the relevant time period.

The Plan included a group health insurance policy from defendant Blue Shield of California ("Blue Shield"). The policy provided, in part, that

[t]his Contract is subject to the requirements of the Knox–Keene Health Care Service Plan Act, Chapter 2.2 of Division 2 of the California Health and Safety Code and Title 28 of the California Code of Regulations. Any provision required to be in this Contract by reason of the Act or Regulations shall bind Blue Shield whether or not such provision is actually included in the Contract.

The policy also included provisions excluding coverage for "residential treatment."

Geoffrey received residential mental health and behavioral treatment at Island View Residential Treatment Center ("IVRTC") in the State of Utah, from May 24, 2007 through February 27, 2008. Blue Shield denied coverage for Geoffrey's residential treatment, based on the policy exclusion in the Plan.

Plaintiffs filed the present action on May 8, 2009. Plaintiffs allege that Blue Shield's practice of excluding coverage for residential treatment services involving mental health conditions violates the terms of Blue Shield's policies and the requirements of the California Mental Health Parity Act, California Health & Safety Code § 1374.72 ("Parity Act") and California Insurance Code § 10144.5, which mandate coverage for treatment of severe mental illness in a person of any age, and serious emotional disturbances ("SED") in a child, under the same terms and conditions applied to other medical conditions.

Plaintiffs assert two causes of action—a claim of "violation of the terms of the contract" which is "governed by ERISA," and a claim for "declaratory and injunctive relief." In the claim of violation of the terms of the contract, plaintiffs allege that the terms of the contract "provide coverage for appropriate medically necessary treatment for mental health conditions that accord with the requirements of California insurance law," and that Blue Shield's refusal to provide coverage for residential treatment of mental health conditions violated those contract terms. In the claim for declaratory and injunctive relief, plaintiffs seek a judicial declaration that "Blue Shield's practice of denying coverage for residential treatment services violates the

requirements of ERISA and the terms of the insurance policies at issue in this case," and ask the court to enjoin "Blue Shield's practice of excluding coverage for residential treatment services."

Blue Shield filed a motion for summary judgment, arguing that it had not abused its discretion by denying plaintiffs' claims for residential care, because the Plan stated in three places that it did not cover residential care for mental health conditions, because Blue Shield had advised plaintiffs in advance that residential treatment was not covered, and because IVRTC was not a facility of the type for which the Plan provided coverage as it was not a "Hospital," and did not offer mental health services in a "Partial Hospitalization/ Day Treatment Program" or an "Outpatient Facility." Blue Shield also asserted that it had fully complied with the requirements of the Parity Act, as the Plan provided parity of coverage between mental and physical conditions for all required conditions under the Act.

In their opposition, plaintiffs agreed that IVRTC was not a "Hospital," a "Partial Hospitalization/Day Treatment Program," or an "Outpatient Facility," but argued that the Parity Act required Blue Shield to provide coverage for residential treatment because residential treatment plays a crucial role in treating SED children such as Geoffrey, and because the California Legislature intended that insurers cover "medically necessary" mental health treatment.

On March 3, 2011, the court granted Blue Shield's motion. The court found that the Parity Act does not require coverage for any particular mental health services, but requires only *parity* of coverage for "outpatient services," "inpatient services," and "partial hospital services," and only for a health care service (whether physical or mental) that is a benefit provided under a given plan. That is, the court concluded, if the plan at issue covers "hospitalization" for physical illness where medically necessary, it must also cover "hospitalization" for mental illness where medically necessary. Because the Plan did not provide for residential treatment as a benefit for any condition, the court found that the Parity Act did not require that

Geoffrey's residential treatment be covered for behavioral and mental disorders.

Plaintiffs appealed the ruling and judgment. During the pendency of the appeal, the Ninth Circuit issued its decision in *Harlick v. Blue Shield of Calif.*, 686 F.3d 699 (9th Cir.2012). The plaintiff in *Harlick* was a participant in a Blue Shield ERISA plan that excluded coverage for residential treatment. She suffered from anorexia, a mental health condition covered by the Parity Act. She was treated at Castlewood, a Missouri residential care facility specializing in eating disorders. *See id.* at 703–04.

The Ninth Circuit majority held that while the plan at issue did not require Blue Shield to pay for residential care under its residential care exclusion, the Parity Act requires plans falling within the scope of the Parity Act to cover "medically necessary treatment" for mental health conditions covered by the Act, subject to the same financial terms and conditions they impose on coverage for physical illnesses. *Id.* at 707, 719, 721.[1] The majority concluded that under the facts of the case, residential care for treatment of anorexia was a benefit that was covered pursuant to the Parity Act.

On January 22, 2013, the Ninth Circuit issued a decision reversing the grant of summary judgment in the present case. The order stated that because the court had held that the Parity Act requires health plans to provide coverage for all medically necessary treatment for severe mental illnesses, "the basis for the district court's order granting summary judgment in favor of [Blue Shield] is foreclosed by *Harlick*, [and] appellants' opposed motion for summary disposition is granted." The court summarily reversed the judgment and remanded the case "for further proceedings consistent with *Harlick*."

## DISCUSSION

### A. Legal Standard

■ A party seeking to maintain a class action " 'must affirmatively demonstrate his compliance' " with Federal Rule of Civil Pro-

cedure 23. *Comcast Corp. v. Behrend,* —— U.S. ——, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013) (quoting *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 2551–52, 180 L.Ed.2d 374 (2011)); *see also Gen'l Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (party moving for class certification bears the burden of establishing that the Rule 23 requirements are satisfied).

■ The primary question in deciding a plaintiff's motion for class certification is not whether the plaintiff has stated a cause of action that will prevail on the merits, but whether he/she has met the requirements of Rule 23. *See United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL–CIO v. ConocoPhillips Co.,* 593 F.3d 802, 808 (9th Cir. 2010); *see also Mazza v. American Honda Motor Co., Inc.,* 666 F.3d 581, 588 (9th Cir. 2012) (court must conduct a "rigorous analysis" to determine whether the moving party has met the prerequisites of Rule 23). However, Rule 23 "does not set forth a mere pleading standard." *Comcast,* 133 S.Ct. at 1432 (quoting *Dukes,* 131 S.Ct. at 2551–52). Plaintiffs must prove that they meet each of the four requirements of Federal Rule of Civil Procedure 23(a), and at least one of the requirements of Rule 23(b). *Id.; see also Dukes,* 131 S.Ct. at 2551–52.

■ As a threshold matter, the party seeking class certification must demonstrate that an identifiable and ascertainable class exists. *Mazur v. eBay Inc.,* 257 F.R.D. 563, 567 (N.D.Cal.2009). "While it is not an enumerated requirement of Rule 23, courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.' " *Vietnam Veterans of Am. v. C.I.A.,* 288 F.R.D. 192, 211 (N.D.Cal.2012) (quoting *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970)).

Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality and adequacy of representation in order to

---

**1.** Plans that "fall within the scope of the Act" are plans whose contracts where "issued, amended, or renewed on or after July 1, 2000, that pro-

vide[ ] hospital, medical, or surgical coverage." Cal. Health & Saf.Code § 1374.72(a).

maintain a class. *Mazza,* 666 F.3d at 588. That is, the class must be so numerous that joinder of all members individually is "impracticable;" there must be questions of law or fact common to the class; the claims or defenses of the class representative must be typical of the claims or defenses of the class; and the class representative must be able to protect fairly and adequately the interests of all members of the class. *See* Fed.R.Civ.P. 23(a)(1)–(4).

If the class is ascertainable and all four prerequisites of Rule 23(a) are satisfied, the court must also find that plaintiffs have "satisf[ied] through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast,* 133 S.Ct. at 1432. Rule 23(b)(1) requires a showing that there is a risk of substantial prejudice or inconsistent adjudications from separate actions, while Rule 23(b)(2) requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(1), (2). Rule 23(b)(3), under which plaintiffs seek certification in the present case, requires a showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

 "[A] court's class-certification analysis ... may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans and Trust Funds,* —— U.S. ——, 133 S.Ct. 1184, 1194, 185 L.Ed.2d 308 (2013) (quoting *Dukes,* 131 S.Ct. at 2551). Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Id.* at 1194–95. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195. If it concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class. *See Zinser v.*

*Accufix Research Institute, Inc.,* 253 F.3d 1180, 1186 (9th Cir.2001), *amended by* 273 F.3d 1266 (9th Cir.2001).

### B. Plaintiffs' Motion

Plaintiffs contend that class certification is proper in this case because each of the members of the class suffered the same type of injury. They argue that each of the class members is a Blue Shield participant or beneficiary in an ERISA plan who was treated in a residential treatment center ("RTC") or who was financially responsible for payment of RTC treatment, and whose claims for RTC treatment were routinely denied by Blue Shield.

Plaintiffs assert that the proposed class meets all the requirements of Rule 23. They contend that the proposed class is ascertainable, and that it satisfies the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation. They also assert that the proposed class meets the requirements of Rule 23(b)(3), as common questions predominate and a class action is a superior means of adjudicating plaintiffs' claims in this case.

In opposition, Blue Shield argues that the definition of the proposed class is overbroad and that the class is not ascertainable. Blue Shield does not contest plaintiffs' contentions with regard to the Rule 23(a) requirements, but focuses instead on the Rule 23(b)(3) factors, arguing that individual issues predominate over common questions as to both liability and damages, and that a class action is not a superior method of adjudicating plaintiffs' claims.

### 1. Ascertainability

 "An order that certifies a class action must define the class and the class claims, issues, or defenses...." Fed. R.Civ.P. 23(c)(1)(B). "Defining the class is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the 'best notice practicable' in a Rule 23(b)(3) action." *Manual for Complex Litigation, Fourth* § 21.222 (2004). While Rule 23 does not impose any explicit require-

ment concerning the class definition, courts generally accept that the definition must be "precise, objective, and presently ascertainable" before the class action can proceed. *See id.*; *see also Xavier v. Philip Morris USA Inc.*, 787 F.Supp.2d 1075, 1089 (N.D.Cal.2011); *Rodriguez v. Gates*, 2002 WL 1162675 at *8 (C.D.Cal. May 30, 2002) (quoting *O'Connor v. Boeing North American, Inc.*, 184 F.R.D. 311, 319 (C.D.Cal. 1998)).

■■■ "[A] class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" *Vietnam Vets*, 288 F.R.D. at 211 (quoting *O'Connor*, 184 F.R.D. at 319). That is, the class definition must be sufficiently definite so that the members of the class can be ascertained by reference to objective criteria. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5429718 at *6 (N.D.Cal., June 20, 2013); *see Xavier*, 787 F.Supp.2d at 1089. "A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class." *Hanni v. Am. Airlines, Inc.*, 2010 WL 289297, at *9 (N.D.Cal. Jan. 15, 2010) (quoting 5 James W. Moore, *Moore's Federal Practice* § 23.21(3)(c) (Matthew Bender 3d ed.2011)); *see also Tidenberg v. Bidz.com*, 2010 WL 135580 at *2 (C.D.Cal. Jan. 7, 2010); *Heffelfinger v. Elec. Data Sys. Corp.*, 2008 WL 8128621 at *5 (C.D.Cal. Jan. 7, 2008).

In the present action, plaintiffs define the proposed class in the complaint as "the group of individuals and entities who have been wrongfully denied coverage for residential treatment services for mental health conditions under Blue Shield group or individual health insurance policies." Cplt ¶ 14. They also allege that "Blue Shield is responsible to pay the [p]laintiffs and all proposed class members the benefits due under the terms of the Contract for medical treatment provided to adolescents and young adults at residential

treatment facilities for mental health conditions . . . ." Cplt ¶ 81.[2]

In their motion, plaintiffs seek certification of a Rule 23(b)(3) class of "beneficiaries who received residential treatment for mental health and behavior disorders, whose requests were denied by Blue Shield of California based on a policy exclusion for residential treatment, and whose health insurance was governed by [ERISA]." This proposed class also includes "parents of those beneficiaries to the extent they were financially responsible for payment for the treatment."

Plaintiffs argue that the proposed class is adequately defined and is clearly ascertainable by reference to objective criteria. They assert that each member of the proposed class was denied reimbursement for RTC treatment, and that it is administratively feasible to determine whether a particular person is a class member because Blue Shield maintains a computer system that could easily identify class members. Specifically, they assert that Blue Shield can use the taxpayer ID numbers of the RTCs (which it can find on the claim forms) to search its database, and that its computer system will allow it to determine for each person the reason for the denial; and that Blue Shield can also search its computer system for information about the providers' "licensure," which will enable it to determine which providers have an RTC license.

In support of this argument, plaintiffs cite to the deposition testimony of Shari Glago, a Senior Network Manager for Blue Shield. However, plaintiffs have not provided a copy of the transcript of this deposition testimony, or of any of the deposition testimony cited elsewhere in their motion. With the exception of motions on the pleadings, motions in federal court are generally decided on the basis of declarations or affidavits or other written evidence, including properly authenticated exhibits. *See* Fed.R.Civ.P. 43(c); Civ. L.R. 7–5; *see also* Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* §§ 12:42, et seq. The court does not

---

**2.** The allegations in the complaint suggest an intent to seek certification under either Rule 23(b)(1) or Rule 23(b)(2), as there is no mention

of predominance of common questions or superiority of the class action procedure.

consider any arguments based on factual assertions that are unsupported by evidence.

The only evidence provided by plaintiffs in support of their argument that the class is ascertainable is a declaration by Mary C. Covington, the President and CEO of Denials Management, Inc., a Utah-based company that provides assistance to claimants and healthcare organizations pursuing denied insurance claims. She claims that "if necessary," she "or someone with similar experience," could "contact RTCs to obtain records showing Blue Shield denials of payment based on the residential treatment exclusion," which in her view "would allow identification of members of the proposed class."

In opposition, Blue Shield contends that the proposed class is overbroad, because it is not limited by time, and because it potentially includes individuals who did not suffer from a condition required to be covered under the Parity Act. Blue Shield asserts further that the proposed class is not ascertainable because it is not possible for Blue Shield to readily identify from its own records whether a particular plan is governed by ERISA, and because plaintiffs have not established a feasible basis for identifying "residential treatment" claims that would be governed by the Parity Act.

Citing the declaration of Tina Donohue, a Blue Shield claims manager, Blue Shield contends that there is no standard or internal code that identifies whether a Blue Shield plan is covered by ERISA; and no unique code or group of codes—standard or internal—that would readily identify all claims for services at an RTC or that are universally used by RTCs in submitting bills to Blue Shield on standard claim forms used by institutional health care providers. Citing the declaration of Shari Glago and another Senior Network Manager, Regina O'Brien, Blue Shield asserts that plaintiffs' proposed approach to identifying RTCs by searching for contracted providers with a residential treatment license is unworkable, as Blue Shield does not contract with out-of-state providers, and as to California providers, there is no licensure specific to RTCs.

The court finds that the class definition is not precise or sufficiently definite, and that the proposed class is not clearly ascertainable by reference to objective criteria. Plaintiffs have proffered an array of class definitions, none of which can be considered "precise, objective, and presently ascertainable." In short, the definition is a moving target.

In the complaint, the proposed class consists of a "group of individuals and entities who have been wrongfully denied coverage for residential treatment services for mental health conditions under Blue Shield group of individual health insurance policies;" and Blue Shield is "responsible to pay" the proposed class members "for medical treatment provided to adolescents and young adults at residential treatment facilities for mental health conditions."

In their moving papers, the proposed class is defined as "beneficiaries who received residential treatment for mental health and behavior disorders, whose requests were denied by Blue Shield of California based on a policy exclusion for residential treatment, and whose health insurance was governed by [ERISA]," plus "parents of those beneficiaries to the extent they were financially responsible for payment for the treatment."

In the reply brief, plaintiffs assert at various points in their argument that the members of the proposed class are "individuals insured by Blue Shield of California who received treatment at residential treatment centers ... and whose treatment was not fully reimbursed;" or are claimants whose claims are "ERISA claim[s], for a Parity Act condition for treatment in an RTC;" or are " 'insureds' of Blue Shield rather than participants or beneficiaries of self-funded plans for which Blue Shield acts as a third party administrator;" or are "insureds" who "received treatment for a Parity Act diagnosis." At the hearing on the motion, in response to the court's request for clarification of the definition of the proposed class, plaintiffs' counsel responded that the class consists of "individuals insured by Blue Shield who had claims they incurred at residential treatment centers and whose claims were denied based on a policy exclusion."

Plaintiffs have failed to provide a precise and objective definition of the class. It is unclear whether the class includes every "individual or entity" insured by Blue Shield who was denied coverage for residential treatment for a mental health condition, or whether it is limited to those insured by Blue Shield under an ERISA plan. Nor can the court determine whether the proposed class is limited to those who were diagnosed with a "serious mental illness" as defined in the Parity Act, or whether it includes those who were treated for any mental health condition in a residential treatment facility. Nor is it clear whether the proposed class is limited to children and adolescents, or whether it includes "young adults," or more generally, beneficiaries over the age of 18; or, if it is limited to children and adolescents, whether their parents (who did not receive residential treatment) are also members of the class. The only constants appear to be beneficiaries who were insured in some capacity under a Blue Shield health insurance policy, and who received mental health treatment in a residential treatment facility, and who claim that Blue Shield improperly denied coverage. This failure to precisely define the proposed class creates a major barrier for certification.

■ Apart from the lack of a coherent class definition, the court finds that the class is not ascertainable for several additional reasons. The class must be ascertainable in order that the preclusive effect of final judgment can be properly enforced.

> The class definition must be clear in its applicability so that it will be clear later on whose rights are merged into the judgment, that is, who gets the benefit of any relief and who gets the burden of any loss. If the definition is not clear in its applicability, then satellite litigation will be invited over who was in the class in the first place.

*Xavier,* 787 F.Supp.2d at 1089 (citing *Romberio v. Unumprovident Corp.,* 385 Fed. Appx. 423, 431–33 (6th Cir.2009); *Newton v.*

*Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 187, 191–93 (3d Cir.2001)).

Here, taking just the class definition proposed in the moving papers, the court notes that it includes class members who are not similarly situated, as it specifies that the members of the proposed class are the "beneficiaries" who received residential treatment, and the "parents of those beneficiaries" who did not receive treatment, but who were financially responsible for paying for the treatment received by the beneficiaries. In addition, however, the proposed definition is not limited to "beneficiaries" who were minors. The proposed class appears to include every beneficiary/participant in a Blue Shield ERISA plan who was denied coverage, based on a policy exclusion, for any form of "residential treatment" for any form of mental illness or behavioral disorder.

■ Further, none of the proposed class definitions is limited in any way as to time. Blue Shield contends that plaintiffs are attempting to sweep in claims that were submitted more than four years before the filing of the complaint, or that were submitted after Blue Shield claims it started paying for residential treatment in 2011. There is no federal statute of limitation applicable to lawsuits seeking benefits under ERISA. *Gordon v. Deloitte & Touche, LLP Group,* 749 F.3d 746, 750 (9th Cir.2014). The Ninth Circuit therefore looks to the most analogous state statute—which in California is the four-year statute of limitation governing actions involving written contracts. *Id.* At the hearing, plaintiffs' counsel stated that plaintiffs would be "happy to go back four years before the filing of the complaint." Presumably, then, although plaintiffs have not limited any of their proposed definitions by time, they now propose a class period beginning on May 8, 2005. It also appears, however, that they contend that the class period extends up to the present, which raises a further factual dispute as to whether Blue Shield has revised its practices *post-Harlick* with regard to covering claims for residential treatment.[3]

---

**3.** Plaintiffs contend that the proposed class includes claimants whose claims were denied *post-Harlick*. According to plaintiffs, Blue Shield "continues to tell its insureds who call to verify the existence of benefits or pre-authorize residen-

tial treatment, that it does not reimburse treatment at RTCs." In support, plaintiffs cite to the Second Declaration of Mary C. Covington (filed with the reply brief), and to a letter they claim Blue Shield mailed in May 2014 to one of its

Plaintiffs have not precisely defined the class based on objective criteria. Plaintiffs contend that the class is ascertainable because Blue Shield and/or the providers have sufficient information in their records to determine who is a member of the class and are capable of reviewing those records to locate any potential class member. However, plaintiffs have not proposed any workable method by which the members of the proposed class (however defined) can be identified.

Plaintiffs repeatedly assert that Blue Shield's "records" will yield the information necessary to determine which plans are governed by ERISA, but, as explained below in the discussion of the Rule 23(b)(3) requirements, unless Blue Shield conducts a series of individualized inquiries, it cannot readily make that determination. To do so, it must ascertain the level of employer involvement, including whether the employer established and maintained the plan and made contributions to the plan; and the relationship between Blue Shield and the plan in determining the proper defendant.

 Similarly, plaintiffs have failed to establish a feasible basis for identifying the "residential treatment" claims that would be covered by the Parity Act. They contend that Blue Shield has "records" showing which claims it denied based on its RTC exclusion, and argue that the class could be ascertained "by examining those records," as could the question whether the claims are residential treatment claims. Nevertheless, as shown by the Glago, Donohue, and O'Brien declarations, Blue Shield cannot readily identify all the "residential treatment" claims, and would be required to conduct an individualized analysis of all submitted claims to determine which ones might potentially have been submitted by members of the proposed class, and whether they in fact included treatment for Parity Act conditions. Certification is not appropriate where ascertaining class membership necessitates an unmanageable individualized inquiry. *See Tietsworth v. Sears, Roebuck & Co.*, 2013 WL 1303100, at *3–4 (N.D.Cal. Mar. 28, 2013)

A further problem is that at least some of the proposed class definitions appear to define class membership by reference to individuals who received residential treatment and whose claims were denied by Blue Shield in violation of the Parity Act. Determining class membership under such a definition will essentially require resolving the merits of each individual's claim that he or she received residential treatment for a mental health condition, and that Blue Shield unlawfully denied coverage. This by itself renders the class action "unmanageable virtually by definition," *see Heffelfinger*, 2008 WL 8128621, at *5; 5 *Moore's Federal Practice*, § 23.21[3][c], and makes plaintiffs' class definition unworkable.

 Finally, while a lack of ascertainability alone will not necessarily defeat class certification, *see Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *11 (N.D.Cal. June 13, 2014), manageability is a factor that must be taken into consideration before the court can certify a Rule 23(b)(3) class. *See* Schwarzer, et al., §§ 10:427, et seq.; *see also In re POM Wonderful LLC*, 2014 WL 1225184, at *6 n. 8 (C.D.Cal. Mar. 25, 2014) (noting that administrative difficulties implicate not only the threshold ascertainability question, but also manageability and superiority concerns under Rule 23(b)(3)).

2. Rule 23(a)

 "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Dukes*, 131 S.Ct. at 2550. When considering a class certification motion, the trial court must perform a "rigorous analysis" to ensure that "the prerequisites of Rule 23(a) have been satisfied." *Id.* at 2551. In doing so, and as *Dukes* clarifies, a district court must examine evidence going to the merits, to the extent examination of that evidence necessarily overlaps with the analysis required to determine whether Rule 23(a) factors have been met. *See id.* at 2552.

insureds denying coverage for RTC (attached as an exhibit to the Covington declaration). However, the declaration lacks any foundation for the

conclusions concerning whether Blue Shield changed its practices post-*Harlick*.

#### a. Numerosity

Rule 23(a)(1) requires a showing that the class is so numerous that joinder of all members individually is "impracticable." Courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members, and will find that it has not been satisfied when the class comprises 21 or fewer. *See, e.g., Celano v. Marriott Int'l, Inc.,* 242 F.R.D. 544, 549 (N.D.Cal.2007). Here, plaintiffs contend that the proposed class meets this requirement, and Blue Shield offers no opposition. Accordingly, the court finds that the proposed class is sufficiently "numerous."

#### b. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." This provision requires plaintiffs to "demonstrate that the class members 'have suffered the same injury,' " not merely violations of "the same provision of law." *Dukes,* 131 S.Ct. at 2551 (citation omitted). Accordingly, plaintiffs' claims "must depend upon a common contention" such that "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common 'questions'—even in droves— but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (citation omitted).

Plaintiffs need not show, however, that "every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Wang v. Chinese Daily News, Inc.,* 737 F.3d 538, 544 (9th Cir.2013) (quoting *Dukes,* 131 S.Ct. at 2556); *see also Mazza,* 666 F.3d at 589 ("commonality only requires a single significant question of law or fact"). Thus, "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Evon v. Law Offices of Sidney Mic-*

*kell,* 688 F.3d 1015, 1029 (9th Cir.2012) (citations and quotations omitted).

Plaintiffs argue that there are questions of law or fact common to the class. Specifically, they contend that "the" common question/issue was set out by the Ninth Circuit in its January 23, 2013 order reversing the order granting summary judgment for Blue Shield in this case—that under *Harlick,* the Parity Law requires health plans to provide coverage for all medically necessary treatment for severe mental illness. Here, they assert, because "each of the proposed class members has a claim that would be governed by *Harlick,* application of [*Harlick*] presents a common question." Plaintiffs contend that this common issue is the same for all class members, and all the class members were injured in the same way because Blue Shield improperly denied payment for their care in an RTC.

Blue Shield does not dispute that the proposed class meets the commonality requirement. It is not entirely clear that this is a "common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke," *Dukes,* 131 S.Ct. at 2551, as the "question" has already been decided, at least as to the individual claim raised in the *Harlick* case (which was not a class action), and which involved a claim for residential treatment for anorexia. Nevertheless, for purposes of Rule 23(b)(2), "even a single [common] question will do." *Id.* at 2556.

The general principle that notwithstanding any policy exclusion, the Parity Act requires "coverage" for the types of "severe mental illnesses" listed in the statute, including "severe emotional disturbances of a child" or "SEDs"—which coverage may include residential treatment—is arguably sufficient to show commonality.

#### c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Representative claims are "typical" if they are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v.*

*Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998). The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992). Thus, "[t]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.*

"Where the challenged conduct is a policy or practice that affects all class members, the underlying issue presented with respect to typicality is similar to that presented with respect to commonality, although the emphasis may be different." *Armstrong v. Davis*, 275 F.3d 849, 868–69 (9th Cir.2001). The named plaintiffs' injuries need not be identical to those of the other class members; what is required is that "the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Id.*

Here, plaintiffs argue that their claims are typical of the claims of the members of the proposed class. They assert that Geoffrey F. received residential treatment which Blue Shield refused to cover, and his parents, Daniel F. and Shan O. were responsible for paying for his care at IVRTC, and now seek reimbursement for Geoffrey's care. They contend that all members of the proposed class are participants and beneficiaries whose RTC treatment was not reimbursed, and thus, the named plaintiffs' claims are typical.

They contend that all members of the class were injured by the same course of conduct and suffered essentially the same injury, in that each member of the class was responsible for medical bills that should have been covered by their insurer, Blue Shield (which denied payment). Plaintiffs contend that because Daniel F. and Shan O. paid for Geoffrey's treatment at IVRTC, their interests are aligned with the interests of the other members of the class. They assert that there is no conflict between the legal theory of the named plaintiffs and that of the class

generally, and that the named plaintiffs are typical.

As noted above, Blue Shield has provided no argument in opposition to plaintiffs' contention that their claims are typical of the claims of the class. Given the problems with lack of ascertainability, it is difficult to make a determination as to whether plaintiffs' claims are typical of the claims of the members of the proposed class. Nevertheless, in light of Blue Shield's failure to oppose this part of the motion, the court finds that plaintiffs claims are typical of the claims of the class.

#### d. Adequacy of representation

█ Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." To determine whether named plaintiffs will adequately represent a class, courts must decide whether the named plaintiffs and their counsel have any conflicts of interest with other class members and whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir.2011).

Here, plaintiffs assert that they will fairly and adequately protect the interests of the class. First, with regard to conflicts of interest, they argue that because their claims are typical of those of the class, their interests are closely bound to those of the absent class members and there is no conflict. They contend that they will all benefit from the application of *Harlick* so that their claims at residential treatment centers will be paid by Blue Shield.

Second, plaintiffs argue that they have vigorously pursued this action on behalf of the class—having pursued the matter through summary judgment and appeal—and that in so doing, they have adequately protected the interests of the class. They also assert that the lawyers for the proposed class are experienced in class action litigation and also experienced in ERISA and other types of health insurance litigation.

Based on Blue Shield's failure to oppose this part of the motion, the court finds that

plaintiffs will adequately and fairly protect the interests of the class.

### 3. Rule 23(b)

Plaintiffs seek certification of a Rule 23(b)(3) class. Plaintiffs must "satisfy through evidentiary proof" the provisions of Rule 23(b)(3). *See Comcast*, 133 S.Ct. at 1432. Under Rule 23(b)(3), a plaintiff must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. Pro. 23(b)(3).

#### a. Predominance of common questions

■■■ The requirement that questions of law or fact common to class members predominate over questions affecting only individual members "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). This inquiry requires the weighing of the common questions in the case against the individualized questions, which differs from the Rule 23(a)(2) inquiry as to whether the plaintiff can show the existence of a common question of law or fact. *See Dukes*, 131 S.Ct. at 2556.

■■■ In addition, however, Rule 23(b)(3) requires a more stringent analysis than does Rule 23(a)(2). *See Comcast*, 133 S.Ct. at 1432. Rule 23(a)(2) simply requires a "common contention" that is "capable of classwide resolution" and "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Amchem*, 521 U.S. at 624, 117 S.Ct. 2231; *see also Comcast*, 133 S.Ct. at 1432; *Dukes*, 131 S.Ct. at 2545, 2551. By contrast, to satisfy the Rule 23(b)(3) predominance inquiry, it is not enough to establish that common questions of law or fact exist, as it is under Rule 23(a)(2)'s commonality requirement. Indeed, the analysis under Rule 23(b)(3) "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)." *Hanlon*, 150 F.3d at 1022. Rule 23(b)(3) focuses on "the relationship between the common and individual issues." *Id.* Under the predominance inquiry, "there is clear justification for handling the dispute on a representative rather than an individual basis" if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication...." *Id. quoted in Mazza*, 666 F.3d at 589. An essential part of the predominance test is whether "adjudication of common issues will help achieve judicial economy." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir.2009) (citations and quotations omitted).

■■■ Thus, to satisfy this requirement, plaintiffs must show *both* (1) that the existence of individual injury arising from the defendant's alleged actions (i.e., the defendant's liability to each class member) is "capable of proof at trial through evidence ... common to the class rather than individual to its members" and (2) that "the damages resulting from that injury [are] measurable 'on a class-wide basis' through the use of a 'common methodology.'" *Comcast*, 133 S.Ct. at 1430 (citation omitted).

Plaintiffs contend that any questions about the identity of the class members and the damages they suffered can be addressed by resort to Blue Shield's records, without the need for a multitude of mini-trials. In their moving papers, they identify but a single "common question"—whether the Parity Act requires Blue Shield to cover residential care for serious mental illness as defined in the Act, notwithstanding the residential care exclusion in its health plans. As this question was answered in *Harlick*, plaintiffs also argue that the application of *Harlick* "predominates over all other issues in this case," as it "establishes that under ERISA, the Parity Law prohibits Blue Shield from denying reimbursement for RTC coverage," and was decided in a way that determines the issue for all members of the class.

Plaintiffs also argue that the class members have "similar kinds of damages," in that each class member was damaged "because Blue Shield did not pay for residential treatment." Plaintiffs acknowledge that there will be differences in the amounts each will be entitled to recover, but contend that the

fact that damages may require individualized inquiries does not defeat certification of a Rule 23(b)(3) class. They claim that their position is supported by *Leyva v. Medline Indus.*, 716 F.3d 510 (9th Cir.2013), where the court held that in this Circuit, "damage calculations alone cannot defeat class certification." *Id.* at 513–14.

In opposition, Blue Shield argues that plaintiffs cannot meet the requirements of Rule 23(b)(3) because individual issues predominate over common questions as to both liability and damages. Blue Shield notes that plaintiffs have identified only a single common question—whether the Parity Act requires Blue Shield to cover residential care notwithstanding the residential care exclusion in its health plans. But, Blue Shield notes, this question has already been decided—in *Harlick*. Thus, there is no remaining common question for the court to resolve. Moreover, Blue Shield, asserts, whether a particular individual can recover under *Harlick* depends on myriad claimant-specific issues that require individualized discovery and proof, such that there is no way that a single trial could resolve all the putative class members' claims.

██ The court finds that plaintiffs have failed to establish that common issues predominate over questions affecting only individual members. The court begins with the elements of the underlying causes of action. Here, plaintiffs allege two causes of action—an ERISA claim of denial of benefits based on a violation of the terms of the contract, and a claim of declaratory and injunctive relief. However, because declaratory and injunctive relief are remedies, rather than independent causes of action, the sole substantive claim is the claim that Blue Shield violated the terms of an ERISA plan contract by denying coverage for residential treatment of serious mental illness as defined in the Parity Act.

With regard to liability, the question whether a particular claimant's plan is governed by ERISA involves individualized issues. "The existence of an ERISA plan is a question of fact, to be answered in the light of all the surrounding circumstances from the point of view of a reasonable person."

*Stuart v. UNUM Life Ins. Co. of America,* 217 F.3d 1145, 1149 (9th Cir.2000) (citation and quotation omitted).

To resolve this question, the court must among other things consider whether the plan was established or maintained by an employer or employee organization; whether the employer or employee organization made any contributions; whether participation in the plan was voluntary for employees or members; whether the sole functions of the employer or employee organization were, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs, and to remit them to the insurer; and whether the employer or employee organization received any consideration in connection with the program other than reasonable compensation for administrative services actually rendered in connection with payroll deductions of dues checkoffs. *See* 29 U.S.C. § 1002(1), (2); 29 C.F.R. § 2510.3–1(j).

In addition, the court must evaluate the relationship between Blue Shield and the plan in determining the proper defendant. For example, to the extent that any of the members of the proposed class are beneficiaries of a self-funded plan, Blue Shield would have no liability if it was performing solely as a third-party administrator and did not assume liability as a claims fiduciary. *See Kyle Railways, Inc. v. Pacific Admin. Servs., Inc.,* 990 F.2d 513, 515–516 (9th Cir.1993); *see also IT Corp. v. Gen'l Am. Life Ins. Co.,* 107 F.3d 1415, 1419–22 (9th Cir.1997).

The question whether a claimant's claim falls under the scope of the Parity Act also raises individualized issues. Plaintiffs suggest that liability has been established as to all members of the proposed class by virtue of the Ninth Circuit's decision in *Harlick.* However, *Harlick* held that Blue Shield's exclusion for residential treatment is enforceable except where the Parity Act applies. *See id.,* 686 F.3d at 707–08. Thus, Blue Shield is not required to cover residential treatment for any condition that does not fall under the Parity Act. *Id.* The Parity Act does not cover all treatment for all mental health conditions, but only those "health care

services" that are "medically necessary" for certain severe mental illnesses and SEDs specified in the Act. *See* Cal. Health & Saf.Code § 1374.72; 28 CCR § 1300.74.72. If a particular claimant does not fall within the scope of the Parity Act, the rule in *Harlick* does not apply.

In order to establish that his/her claim falls under the Parity Act, each purported class member would have to show that he/she has a Parity Act condition, that the residential care services he/she received were for treatment of that condition, that the services/treatment were covered by the Parity Act, and that the services/treatment were medically necessary (or that Blue Shield had waived that requirement by not raising it during the administrative proceeding when it had sufficient information in its possession to have evaluated medical necessity). Each of these questions may require an individualized inquiry, which defeats predominance.

For example, a claimant seeking coverage for SED services must be under the age of 18, because "serious emotional disturbances of a child" does not apply to someone over the age of 18. In the present case, Geoffrey was enrolled at IVRTC for approximately nine months, but he turned 18 approximately seven months into his stay.

A claimant seeking coverage for services for treatment of "severe mental illnesses" must show that the diagnosed condition was one of those listed in the Parity Act—schizophrenia, schizoaffective disorder, bipolar disorder (manic-depressive illness), major depressive disorder; panic disorder, obsessive-compulsive disorder, pervasive developmental disorder or autism, anorexia nervosa, and bulimia nervosa. Alcoholism and substance abuse are not listed as a "severe mental illness," but among the other treatment Geoffrey received was therapy for substance abuse, which is not a "severe mental illness" and does not fall under the Parity Act.

With regard to damages, individual issues also predominate. A plaintiff seeking to certify a class under Rule 23(b)(3) must establish "through evidentiary proof" that damages are "capable of measurement 'on a classwide basis.'" *Comcast*, 133 S.Ct. at 1432–33 (citation omitted). Absent such proof, the class cannot be certified because questions of individual damages calculations "will inevitably overwhelm questions common to the class." *Id.* at 1433.

Here, plaintiffs have not offered any proof that damages can be calculated on a class-wide basis. They argue (without proof) that damages can be calculated based on information obtained from Blue Shield's records, or on the "application of Blue Shield's own claims processing procedures." They suggest that any inquiry into damages is irrelevant, citing *Leyva*, 716 F.3d at 513, for the proposition that "damages calculations alone cannot defeat certification."

The facts of *Leyva* are distinguishable from the facts in the present case. *Leyva* involved wage-and-hour claims under California law, asserted by current and former hourly employees against a single employer. In denying the plaintiffs' motion for certification of a Rule 23(b)(3) class, the district court identified only one individualized factor—the amount of pay owed to each of the class members. In reversing the denial of class certification, the Ninth Circuit noted that "damages determinations are individual in nearly all wage-and-hour class actions," and it was in that context that the court held that "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Id.* at 513–14. The court added that if the putative class members proved the liability of the defendant employer, damages would be calculated based on the wages each class member lost due to the employer's unlawful practices, which the evidence showed could be calculated from information in the employer's computerized payroll and time-keeping database. *Id.* at 514

The situation is considerably more complicated in the present action. A claim for denial of benefits under ERISA allows claimants to recover "benefits due to him under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiffs, who do not seek certification of a class of beneficiaries who were covered under the same plan, or who received similar forms of therapy or treatment at the same RTC, have presented no model establishing that damages are capable

of measurement on a classwide basis. Calculating damages will require more than simply re-processing denied claims through Blue Shield's claim processing system, and totaling up all those denied claims.

Blue Shield has presented evidence showing that Geoffrey received non-healthcare services (such as educational services and recreational activities) at IVRTC, along with healthcare services and treatment; that he was treated for Parity Act conditions as well as at least one non-Parity Act condition (substance abuse); and that he was charged for periods of time (up to two weeks at a time) when he was not actually in residence at IVRTC and was therefore not receiving any healthcare services.

Similarly, each member of the proposed class may have received non-healthcare services along with healthcare services and treatment, and may have been treated for non-Parity Act conditions as well as Parity Act conditions. Blue Shield has provided evidence showing that there are several types of RTCs, including therapeutic boarding schools such as IVRTC, eating disorder facilities, and substance abuse facilities, which offer different types of programs and services. For example, eating disorders facilities typically do not provide educational services or recreational activities, and also provide more health services to their patients than do therapeutic boarding schools. Plaintiffs propose no method of determining which treatment/services were covered and to what extent.

In addition, a particular RTC may have presented Blue Shield with a bill for services in a particular amount, while charging the claimant (as in the case of plaintiffs here) a discounted rate, or may have charged Blue Shield for periods of time when the claimant was not in residence at the RTC. Moreover, different plans impose different annual deductibles, co-payments, and out-of-pocket maximums, which would also affect the amount of recovery owed to a particular claimant. *See Harlick*, 686 F.3d at 711, 721.

Plaintiffs' proposed solution is an essentially mechanical process that would not require any close review of individual claims. In this case, however, the process would be far from mechanical, as calculating damages would require manual review of each claimant's records, as well as discovery on what each claimant actually paid, what he/she still owes, the nature of the services provided, and the amounts attributable to services covered under the Parity Act—thus necessitating mini-trials on individualized issues.

### b. Superiority of class action

Rule 23(b)(3) also requires the court to determine whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy," based on the following nonexclusive factors:

(A) the interest of members of the class in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by . . . members of the class; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3)(A)–(D).

Plaintiffs argue that these factors support class certification here. They contend that the first two factors assume the existence of pending litigation against Blue Shield raising the same issues. However, they assert, there is no such pending litigation,[4] so those two factors do not apply. As for the third factor, they claim that "[t]his forum is uniquely well-suited to adjudicate this dispute because of the Ninth Circuit's decision and remand," and that "[r]esolution in this forum eliminates any risk of inconsistent results." Finally, with regard to the fourth factor, plaintiffs contend that the class is manageable, as "[c]lass members can be identified from Blue Shield's records, and notice provided to the addresses in Blue Shield's records." They assert that Blue

---

**4.** Plaintiffs contend that in discovery, Blue Shield provided a list of suits brought against it relating to its denial of RTC claims. According to plain-

tiffs, no pending ERISA claims were listed. Plaintiffs provide no evidentiary support for this assertion.

Shield has not "thus far" suggested any difficulties in manageability.

■ A class action is not a superior method of adjudicating the claims of the proposed class, as determinations of both liability and damages as to each member of the proposed class will require an individualized inquiry. The members of the proposed class have a stronger interest in controlling the prosecution of individual actions because their individual monetary claims are likely to be substantial (which gives each class member an incentive to bring an individual suit). In addition, ERISA provides for attorney's fees. The sole common question—whether the Parity Act requires Blue Shield to cover medically necessary residential treatment notwithstanding the residential care exclusion in its health plans—has already been resolved by *Harlick*. Thus, no efficiencies would be gained by the class action vehicle, because the only questions that remain would be unique to individual beneficiaries.

Finally, and most importantly, managing this case as a class action would be difficult given the individual liability and damages issues, and in particular, given the lack of ascertainability. Manageability of a class action is a key factor in a Rule 23(b)(3) determination, and here, because each class member would have to establish his or her own right to recover (or to establish the extent of any such recovery), a class action would not be "superior." Plaintiffs have made no attempt to explain how the court could possibly try this case as a class action given the number of individual issues involved.

### CONCLUSION

In accordance with the foregoing, the court finds that the motion must be DENIED. In light of plaintiffs' failure to articulate a definition of an ascertainable class, and in light of the fact that numerous individual issues predominate over any common issues, a class action is plainly not a superior method of adjudication of the controversy.

**IT IS SO ORDERED.**