**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HUU NGUYEN, individually, and on behalf of a class of similarly situated individuals,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC., a California Corporation,<br>*Defendant-Appellee.* | No. 18-16344<br><br>D.C. No. 5:16-cv-05591-LHK<br><br><br>OPINION |

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Argued and Submitted June 11, 2019
San Francisco, California

Filed July 26, 2019

Before: MARY M. SCHROEDER and MILAN D.
SMITH, JR., Circuit Judges, and DOUGLAS L. RAYES,[*]
District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Douglas L. Rayes, United States District Judge for the District of Arizona, sitting by designation.

**SUMMARY**[**]

**Class Certification**

The panel reversed the district court's denial of class certification in an action against Nissan North America pursuant to state and federal warranty laws arising from an allegedly faulty hydraulic clutch system in plaintiff's 2012 Nissan vehicle.

The district court denied plaintiff's motion for class certification on the ground that he failed to satisfy the predominance requirement of Federal Rule of Civil Procedure 23(b)(3) due to what the district court viewed as an inappropriate measure of damages.

The panel held that plaintiff's causes of action under California's Consumers Legal Remedies Act, the Song-Beverly Consumer Warranty Act, and the Magnuson-Moss Warranty Act were all viable. The panel held that plaintiff sufficiently demonstrated a nexus between his legal theory—that Nissan violated California law by selling vehicles with a defective clutch system that was not reflected in the sale price—and his damages model—the average cost of repair. The panel determined that plaintiff did not seek damages for the faulty performance of the clutch system, which as the district court concluded, would require an individualized analysis that might defeat predominance. Instead, plaintiff's theory was that the allegedly defective clutch was itself the injury, regardless of whether the faulty

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

clutch caused performance issues.  The panel concluded that the district court abused its discretion when it denied class certification based on a misconception of plaintiff's legal theory.

**COUNSEL**

Ryan Wu (argued) and John E. Stobart, Capstone Law APC, Los Angeles, California, for Plaintiff-Appellant.

Alan J. Lazarus (argued) and Matthew J. Adler, Drinker Biddle & Reath LLP, San Francisco, California; Zoë K. Wilhelm and Adam J. Thurston, Drinker Biddle & Reath LLP, Los Angeles, California; Sherman Vance Wittie and E. Paul Cauley Jr., Drinker Biddle & Reath LLP, Dallas, Texas; for Defendant-Appellee.

Kathy A. Wisniewski and Stephen A. D'Aunoy, Thompson Coburn LLP, St. Louis, Missouri, for Amicus Curiae FCA US LLC.

Philip S. Goldberg, Shook Hardy & Bacon LLP, Washington, D.C.; Andrew J. Trask, Shook Hardy & Bacon LLP, San Francisco, California; for Amici Curiae Alliance of Automobile Manufacturers and Association of Global Automakers.

Ashley C. Parrish, Jesse Snyder, and Jacqueline Glassman, King & Spalding LLP, Washington, D.C.; Jonathan D. Urick and Steven P. Lehotsky, U.S. Chamber of Litigation Center, Washington, D.C.; Leland P. Frost and Peter C. Tolsdorf, Manufacturers' Center for Legal Action, Washington, D.C.;

for Amici Curiae Chamber of Commerce of the United States and National Association of Manufacturers.

---

**OPINION**

M. SMITH, Circuit Judge:

When Plaintiff Huu Nguyen purchased a new 2012 Nissan 370Z as a college graduation present for his son, he was unaware of what he alleges was a potentially catastrophic design defect hidden in the vehicle's hydraulic clutch system. After the clutch purportedly malfunctioned—and Plaintiff spent more than $700 replacing it—he filed a putative class action against Defendant Nissan North America, Inc. (Nissan), asserting causes of action under state and federal warranty laws.

The district court denied Plaintiff's motion for class certification, concluding that he failed to satisfy the predominance requirement of Federal Rule of Civil Procedure 23(b)(3) due to what it viewed as an inappropriate measure of damages. Because we conclude that, following *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), Plaintiff's proposed damages model is consistent with his theory of liability, we reverse the district court's denial of class certification and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

## I. Factual Background

### A. Alleged Defect

This case involves an allegedly faulty hydraulic clutch system in various vehicles manufactured by Nissan (the Class Vehicles).[1]

The typical components of a hydraulic clutch system include a fluid reservoir, a clutch master cylinder (CMC), and a clutch slave cylinder (CSC), which is sometimes referred to as the release bearing.[2]   As explained by Plaintiff's expert, Michael Stapleford, P.E., the clutch system is a dry friction system that uses brake fluid in a discrete reservoir to transfer heat from the clutch components through the base of the CSC to the attached transmission front cover and the surrounding atmosphere. Such a system routinely generates heat ranging from 200 to 300 degrees Celsius, with hard use resulting in temperatures as high as 400 degrees Celsius.

---

[1] Specifically, the Nissan 350Z, model years 2007–09; the Nissan 370Z, model years 2009–15; the Infiniti G35, model years 2007–08; the Infiniti G37, model years 2008–14; and the Infiniti Q60.

[2] A properly functioning hydraulic clutch system is engaged when the driver depresses the clutch pedal, which causes a piston in the CMC to push fluid through the steel hydraulic line to the CSC and against the integrated release bearing, pressurizing the system.  This in turn causes the clutch kit (pressure plate, clutch disc, and flywheel) to disengage the engine from the transmission.  Releasing the clutch pedal releases the fluid pressure, which allows the gears to engage smoothly and efficiently.

Plaintiff alleges that, in reconfiguring the Class Vehicles' factory-installed clutch system in 2007, Nissan failed to properly account for heat transfer and produced a defective aluminum/plastic composite CSC that causes the system to overheat. Consequently, the clutch fluid boils and generates air that causes failure of the clutch pedal, such that it sticks to the floor and prevents a driver from shifting gears. A "sticky" clutch can make it difficult to control a vehicle's speed, presenting both safety and performance issues.

## B.  Nissan's Response

A consumer complaint submitted as evidence by Plaintiff indicates that the Class Vehicles began to malfunction as early as June 2007, while Nissan's own records identified the issue starting in October of that year. An internal Nissan report suggested that "abnormal high-temperature [during] continued use of partial clutch engagement might be the cause." Emails exchanged between Nissan employees in 2012 further discussed the sticky clutch problem and its potential causes, and in July 2012, a Nissan project engineer wrote,

> This issue is great enough that it warrants a serious look by R&D as to how we can improve the feel, and function of the clutch system. . . . Customers are universally dissatisfied with the feel and performance of the system even when it is performing as designed. . . . Combine that with the frequent claims of clutch pedal sticking to floor and you've taken a dissatisfaction item and made it into a breakdown item. I think a wholesale approach to a whole new hydraulic system, including a new pedal, is warranted.

Plaintiff claims that "[d]espite its investigations and testing, or even the change to a higher quality hydraulic fluid in the Class Vehicles, Nissan never informed consumers that the clutch system in the Class Vehicles had an inherent defect that made it prone to heat-related problems." In his complaint, Plaintiff asserted that if he and the other putative class members "knew about these defects at the time of sale or lease, [they] would not have purchased or leased the Class Vehicles or would have paid less for them."

## C.  Plaintiff's 2012 Nissan 370Z

Plaintiff purchased a new 2012 Nissan 370Z from an authorized Nissan dealer in Santa Clara County, California, as a college graduation present for his son, Michael. In March 2014, Michael was driving the 370Z on the freeway when the clutch pedal lost pressure and did not return to its depressed position; Michael had to pull over to the shoulder of the freeway and slow down until the clutch allowed him to shift into second gear. The Nissan dealership replaced the CSC at no charge because the vehicle was still under warranty. When a similar situation developed two years later, however, the 370Z was no longer under warranty, and so Plaintiff had the CSC replaced by an auto repair shop for $721.75.

## II.  Procedural History

Plaintiff's first amended complaint alleged five causes of action against Nissan: (1) violations of California's Consumers Legal Remedies Act (CLRA); (2) violations of California's Unfair Competition Law (UCL); (3) breach of implied warranty pursuant to the Song-Beverly Consumer Warranty Act (Song-Beverly Act); (4) breach of implied warranty pursuant to the Magnuson-Moss Warranty Act (Magnuson-Moss Act); and (5) unjust enrichment. The

district court granted in part Nissan's motion to dismiss, removing Plaintiff's UCL and unjust enrichment claims, and his request for injunctive relief under the CLRA.

Plaintiff moved for class certification pursuant to Federal Rule of Civil Procedure 23(b)(3) (or, in the alternative, under Rule 23(c)(4) for liability only), seeking to certify (1) a class of "[a]ll individuals in California who purchased or leased, from an authorized Nissan dealer, a new Nissan vehicle equipped with a FS6R31A manual transmission"; and (2) a CLRA subclass of "[a]ll members of the Class who are 'consumers' within the meaning of California Civil Code § 1761(d)." Although Nissan opposed class certification for various reasons—including that Plaintiff was not an adequate class representative, that individual issues predominated due to the varying types of automobiles included in the Class Vehicles, and that Nissan's purported knowledge of the defect changed over the course of the class period—a major point of dispute, and the issue on which the district court's eventual order hinged, concerned Plaintiff's damages model.

According to Plaintiff, his "damages model is based on the economic principle of benefit-of-the-bargain and is consistent with [his] theory of liability." Assuming that class members would have either paid less than sticker price or not purchased a defective vehicle at all had the nature of the clutch system been divulged by Nissan, Plaintiff seeks "to recover the difference in value between the non-defective vehicles Nissan promised and the defective vehicles that were delivered based on the cost[] to replace the composite CSC with one that is solid cast-aluminum." Nissan challenges this proposed damages model, citing the report of an expert who, in its words, "rejected the notion that

average-cost-of-repair represented the amount that informed consumers would discount the price of the [Class] Vehicles."

The district court agreed with Nissan and denied Plaintiff's motion for class certification. It concluded that "Plaintiff [] failed to satisfy the predominance requirement of Rule 23(b)(3)," based on what the court viewed as a "problematic" damages model. The court explained,

> Under the proposed benefit of the bargain model, damages are the difference between the value Nissan represented and the value class members received, measured at the time of purchase. However, the difference between value represented and value received only equals the cost to replace the defective CSC *if* consumers would have deemed the defective part valueless.

(citation omitted). The court reasoned that, under Plaintiff's proposed model, if a class member "derived value from the defective CSC—be it by selling it, repurposing it, or simply driving a ways before replacing it—the class member will have received the full benefit of the bargain *and* the monetary value of the defective part. That is not an appropriate measure of damages." Because the record contained no evidence that the defective clutch was valueless—but *did* contain evidence to the contrary, since "Plaintiff's vehicle was driven for approximately 26,629 miles before the original CSC malfunctioned"—the court rejected Plaintiff's damages model as being an improper measure of the benefit of the bargain. Therefore, the district court concluded that Plaintiff could not satisfy the predominance requirement of Rule 23(b)(3).

We subsequently granted Plaintiff's timely petition for permission to appeal the denial of class certification pursuant to Rule 23(f).

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1292(e) and Rule 23(f). *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 955 (9th Cir. 2005).

"A district court's order denying class certification is reviewed for abuse of discretion." *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1103 (9th Cir. 2017). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law." *United States v. Hinkson*, 585 F.3d 1247, 1259 (9th Cir. 2009) (en banc) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)). But, if the district court "applied the correct legal standard," then we will "set aside its decision only if the court's reasoning was 'illogical, implausible, or without support in inferences that may be drawn from the facts in the record.'" *Civil Rights Educ. & Enf't Ctr.*, 867 F.3d at 1103 (quoting *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1164 (9th Cir. 2014)).

## ANALYSIS

The central issue before us is whether Plaintiff's proposed damages model—specifically, a benefit-of-the-bargain model as measured by the average cost of replacing the allegedly defective clutch system—satisfies Rule 23(b)(3)'s predominance requirement.

In order to certify a class under Rule 23(b)(3), a court must find that "questions of law or fact common to class members predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001), *as amended*, 273 F.3d 1266 (9th Cir. 2001). Although uncertain damages calculations do not alone defeat certification, *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010), the Supreme Court has emphasized that "at the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case *must be consistent* with its liability case.'" *Comcast*, 569 U.S. at 35 (emphasis added) (quoting ABA Section of Antitrust Law, *Proving Antitrust Damages: Legal and Economic Issues* 57, 62 (2d ed. 2010)); *see also id.* at 38 ("The first step in a damages study is the translation of the *legal theory of the harmful event* into an analysis of the economic impact *of that event*." (quoting Fed. Judicial Ctr., *Reference Manual on Scientific Evidence* 432 (3d ed. 2011))).

*Comcast* did not alter our holding that individualized damages issues do not alone defeat certification. *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) ("*Yokoyama* remains the law of this court, even after *Comcast*."); *see also Jimenez*, 765 F.3d at 1168 ("So long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed did not defeat class certification."). But *Comcast* requires that "plaintiffs [] be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *see also Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) ("[P]laintiffs must show that 'damages are capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the

same injurious course of conduct underlying the plaintiffs' legal theory." (quoting *Comcast*, 569 U.S. at 34)). In short, "[u]ncertainty regarding class members' damages does not prevent certification of a class as long as a valid method has been proposed for calculating those damages." *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017), *rev'd on other grounds*, 139 S. Ct. 710 (2019).

## I.  Plaintiff's Causes of Action

We must first consider Plaintiff's causes of action in order to determine whether they permit recovery based on the benefit of the bargain. Following the district court's partial grant of Nissan's motion to dismiss, Plaintiff was left with three viable causes of action at the time of class certification: claims under the CLRA, the Song-Beverly Act, and the Magnuson-Moss Act.[3]

### A.  The CLRA

The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760; *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013) ("[T]he

---

[3] The Magnuson-Moss Act incorporates the substantive provisions of state warranty laws. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("[T]his court's disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims."); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986) ("[E]xcept in the specific instances in which Magnuson-Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law."). Accordingly, we focus only on Plaintiff's causes of action under California law—the CLRA and Song-Beverly Act.

CLRA's 'any damage' requirement is a capacious one that includes any pecuniary damage as well as opportunity costs and transaction costs that result when a consumer is misled by deceptive marketing practices."); *Wilens v. TD Waterhouse Grp., Inc.*, 15 Cal. Rptr. 3d 271, 274 (Ct. App. 2003) (noting that "[i]f the consumer suffers damage as a result of an unlawful act" under the CLRA, then "the consumer can bring an action against the defendant for actual damages, punitive damages, injunctive relief or restitution"). We have noted that "[c]lass wide damages calculations under the . . . CLRA are particularly forgiving. California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.'" *Lambert*, 870 F.3d at 1183 (quoting *Pulaski*, 802 F.3d at 989).

Here, we are satisfied that Plaintiff's proposed benefit-of-the-bargain measure of damages is both cognizable under the CLRA and a reasonable basis of computation. Courts have viewed similar models of recovery favorably in the past. *See, e.g.*, *Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 42–43 (Ct. App. 2006) (describing a "market approach" for "determin[ing] the amount of actual damages for a CLRA award," which provides that "[o]ne defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction" (quoting Cal. Civ. Code § 3343)); *see also Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013) ("A court awarding restitution under the California consumer protection laws has '"very broad" discretion to determine an appropriate remedy award as long as it is supported by the evidence and

is consistent with the purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired.'" (quoting *Wiener v. Dannon Co.*, 255 F.R.D. 658, 670 (C.D. Cal. 2009))).[4]   Nissan has cited no authority, and we are not aware of any, precluding Plaintiff's theory of recovery under the CLRA.

## B.  The Song-Beverly Act

Plaintiff's damages model is similarly cognizable under the Song-Beverly Act, which provides that "[t]he measure of the buyer's damages in an action . . . shall include the rights of replacement or reimbursement."    Cal. Civ. Code § 1794(b); *see also id.* § 1794(b)(2) ("Where the buyer has accepted the goods, Sections 2714 and 2715 of the Commercial Code shall apply, and the measure of damages shall include the cost of repairs necessary to make the goods conform.").   California Commercial Code section 2714 provides that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."  Cal. Com. Code § 2714(2); *see also S. M. Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1375 (9th Cir. 1978) (explaining that section 2714(2) entitles a plaintiff "to recover the monetary equivalent of the benefit of his

---

[4] We further note that Plaintiff's damages model is consistent with the CLRA's safe harbor provision, which requires that a customer "[n]otify the person alleged to have" employed unlawful practices and "[d]emand that the person *correct, repair, replace, or otherwise rectify* the goods or services."  Cal. Civ. Code § 1782(a) (emphasis added).

bargain").**[5]**    Accordingly, "[u]nder California law the remedies for breach of the implied warranty include 'benefit of the bargain' damages." *Ironshore Specialty Ins. Co. v. 23andMe, Inc.*, No. 14-cv-03286-BLF, 2015 WL 2265900, at *4 (N.D. Cal. May 14, 2015).

## II. Plaintiff's Theory of Liability

Having determined that recovery based on the benefit of the bargain is cognizable under Plaintiff's causes of action, we must now determine whether this damages model flows from his theory of liability. *See Comcast*, 569 U.S. at 35.

In his motion for class certification, Plaintiff asserted that he

> has alleged, and can prove through common evidence, that the Class Vehicles were sold with defective CSCs.  That allegation is susceptible to common proof regarding the design of the CSC, which is substantially the same for all Class Vehicles, and individual factors do not affect whether the Class [V]ehicles were sold with a defective CSC.

(citation omitted).    This characterization is crucial. Plaintiff's legal theory is not based on the *performance* of the allegedly defective clutch system, but instead *the system* itself, which he claims is defective.  Had Plaintiff alleged that performance problems constituted the defect and caused his and the class members' injuries, then the benefit of the bargain would not be the appropriate measure of damages

---

**[5]** Section 2715 provides for incidental and consequential damages, which are not at issue here.

because, as the district court noted, class members might have received varying levels of value based on if and when they experienced a sticky clutch problem.  But Plaintiff's theory is that Nissan knowingly designed a defective clutch system and did not inform consumers of the defect.  His expert explained that the CSC "is defectively designed because its wrought aluminum cylinder and plastic base assembly does not provide enough thermal conductivity to effectively transfer heat from the clutch components to the transmission front cover and surrounding air during clutch engagement."  This allegedly defective clutch system "is the same or substantially similar in all of the Class Vehicles."  Accordingly, as Plaintiff argues, "under [his] theory, the *defect* exists—and must be remedied—whether or not the *symptoms* have manifested yet."

Both Nissan and the district court mischaracterized Plaintiff's theory as being centered on performance issues, rather than the defective system itself.  Nissan argues that Plaintiff's "model assumed that 100% of the vehicles would manifest a clutch assembly defect, and none of them would malfunction but for the design flaw."  But this is not accurate; Plaintiff's theory is that the defect was inherent in each of the Class Vehicles at the time of purchase, regardless of when and if the defect manifested.  He alleges that Nissan violated the CLRA because it knew about the defective clutch system and failed to disclose it at the point of sale, that "a reasonable person would have considered [the fact of the alleged defect] to be important in deciding whether to purchase or lease Class Vehicles," and thus that Plaintiff and class members "would not have purchased or leased Class Vehicles equipped with transmissions, or would have paid less for them."  *See Soule v. Gen. Motors Corp.*, 882 P.2d 298, 308 n.3 (Cal. 1994) ("[T]he ordinary consumers of modern automobiles may and do expect that such vehicles

will be designed so as not to explode while idling at stoplights, experience sudden steering or brake failure as they leave the dealership, or roll over and catch fire in two-mile-per-hour collisions."). Plaintiff further alleges that, under the Song-Beverly Act, the Class Vehicles "suffered from an inherent defect at the time of sale." Plaintiff correctly contends that "under both causes of action, the sale of the vehicle with the known defect is the liability-triggering event, not when the overheating manifests." *See Daniel v. Ford Motor Co.*, No. 2:11-02890 WBS EFB, 2016 WL 2899026, at \*7 (E.D. Cal. May 18, 2016) ("[A] reasonable jury could conclude that a consumer would demand that the purchase price of a vehicle with a defect be reduced by the cost of remedying that defect."); *Kearney v. Hyundai Motor Co.*, No. SACV 09-1298 DOC (MLGx), 2010 WL 9093204, at \*5 (C.D. Cal. June 4, 2010) (determining that if "the receipt of a vehicle whose alleged defects reduced the car's value and deprived the consumer of the benefit of the bargain, *even when the alleged defects did not later materialize*," then "the loss was suffered 'at the moment' of purchase" (citing *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007))).

Plaintiff's theory is consistent with our opinion in *Wolin v. Jaguar Land Rover North America, LLC*, in which we concluded that "[t]he district court erred when it concluded, without discussion, that certification is inappropriate because [the plaintiffs] did not prove that the defect manifested in a majority of the class's vehicles." 617 F.3d 1168, 1173 (9th Cir. 2010). We explained that the plaintiff

> alleges breach of implied warranty because the vehicles were defective and not of merchantable quality at the time they left Land Rover's possession. Common issues

> predominate such as whether Land Rover
> was aware of the existence of the alleged
> defect, whether Land Rover had a duty to
> disclose its knowledge and whether it
> violated consumer protection laws when it
> failed to do so. . . . [W]e have held that proof
> of the manifestation of a defect is not a
> prerequisite to class certification.

*Id*. Moreover, in *Pulaski*, we clarified that a restitution calculation under California law

> need not account for benefits received after
> purchase [where] the focus is on the value of
> the service at the time of purchase. Instead
> . . . the focus is on the difference between
> what was paid and what a reasonable
> consumer would have paid at the time of
> purchase without the fraudulent or omitted
> information.

802 F.3d 989.[6] Here, in denying Plaintiff's motion for class certification, the district court focused on potential post-purchase value, suggesting that "the difference between value represented and value received only equals the cost to replace the defective CSC *if* consumers would have deemed

---

[6] *Pulaski* dealt with claims under the UCL and California's False Advertising Law, not the CLRA. *See* 802 F.3d at 983. But although "[d]amages under the CLRA on the one hand and restitution under the False Advertising and Unfair Competition Laws on the other hand are different remedies," the CLRA contemplates restitution, and that concept is treated similarly under the three laws. *Colgan*, 38 Cal. Rptr. 3d at 58–59; *see also Cortez v. Purolator Air Filtration Prods. Co.*, 999 P.2d 706, 713 (Cal. 2000) (discussing the overlap of "restitution" and "damages").

the defective part valueless."   Given Plaintiff's theory of liability, this conclusion was inconsistent with *Wolin* and *Pulaski*.[7]

---

[7] That conclusion was also inconsistent with the holdings of other circuits, which have described benefit-of-the-bargain recovery much as we did in *Pulaski*.  In *Carriuolo v. General Motors Co.*, for example, the Eleventh Circuit cited with approval a Florida state case that asked, "Is a car with defective seatbelt buckles worth less than a car with operational seatbelt buckles?  Common sense indicates that it is[.]" 823 F.3d 977, 987 (11th Cir. 2016) (alteration in original) (quoting *Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 991 (Fla. Dist. Ct. App. 2004)).  The *Carriuolo* court determined that it confronted a "similar question" that was also "amenable to classwide resolution," explaining that

> a manufacturer's misrepresentation may allow it to command a price premium and to overcharge customers systematically.  Even if an individual class member subjectively valued the vehicle equally with or without the accurate [safety information] sticker, she could have suffered a loss in negotiating leverage if a vehicle with perfect safety ratings is worth more on the open market.

*Id*.  The court therefore rejected the defendant's argument that "the liability determination will be highly individualized because the buying and leasing experiences of each proposed class member were not uniform."  *Id.* at 985.  Instead, the court concluded that "damages should reflect the difference between the market value" of what was promised and what was delivered; "[u]nlike the calculation of an individual consumer's direct pecuniary loss, which would limit the plaintiff to the difference of what she paid and the actual value received, the [applicable] 'benefit of the bargain' model provides a standardized class-wide damages figure because the plaintiff's out-of-pocket payment is immaterial."  *Id.* at 986; *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 856–57 (6th Cir. 2013) ("Because *all* Duet owners were injured at the point of sale upon paying a premium price for the Duets as designed, even those owners who have

Plaintiff alleges that Nissan concealed the clutch system's defects from consumers, that the defect was material because it adversely affected the "safety and reliability" of the Class Vehicles, and that he did not get what he bargained for—a transmission "fit for [its] intended use." A benefit-of-the-bargain model of damages aligns with this legal theory; that measure

> is concerned with satisfying the expectancy interest of the defrauded plaintiff by putting him in the position he would have enjoyed if the false representation relied upon had been true; it awards the difference in value between what the plaintiff actually received and what he was fraudulently led to believe he would receive.

*Stout v. Turney*, 586 P.2d 1228, 1232 (Cal. 1978).  Plaintiff seeks to recover damages equaling the amount he purportedly overpaid in purchasing a vehicle with a defective clutch; he "is not seeking a full refund for the vehicle purchase, but for the cost of replacing [] a defective component, which is a proxy for [his] overpayment of the vehicle at the point of sale."   Whether his proposed calculation of the replacement cost is accurate, whether the clutch was actually defective, and whether Nissan knew of the alleged defect are merits inquiries unrelated to class certification.   For now, it is sufficient that Plaintiff has demonstrated the nexus between his legal theory—that Nissan violated California law by selling vehicles with a

---

not experienced a mold problem are properly included within the certified class.").

defective clutch system that was not reflected in the sale price—and his damages model—the average cost of repair.

In response, Nissan maintains that "[t]he manifestation requirement [] impacts the damages analysis." It cites *Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, in which the California Court of Appeal noted that "[u]nless a product actually manifests an alleged defect, the plaintiff has not suffered damages with respect to an implied warranty claim." 87 Cal. Rptr. 3d 5, 33 (Ct. App. 2008); *see also Hicks v. Kaufman & Broad Home Corp.*, 107 Cal. Rptr. 2d 761, 772–73 (Ct. App. 2001) ("If the defect has not manifested itself . . . the buyer has received what he bargained for."). Nissan's argument, however, conflates cases where a defect *causes* an injury, and those, like this one, where the defect itself *is* the injury. As the Court of Appeal has explained, describing the facts of *Anthony v. General Motors Corp.*, 109 Cal. Rptr. 254 (Ct. App. 1973),

> There the plaintiffs did not seek to recover for physical injury or property damage *caused* by the defect in the truck wheels. Rather, they sought to recover the cost of replacing the defective wheels. The primary right alleged to have been violated in *Anthony*, as in the case before us, was the right to take a product free from defect. The defect did not *cause* the plaintiffs' injury; the defect *was* the injury.

*Hicks*, 107 Cal. Rptr. 2d at 771–72.

This distinction is key, and it underscores the fundamental disconnect between Plaintiff's damages theory and Nissan's mischaracterization of what it entails. As we have explained, Plaintiff does not seek damages for the faulty performance of the clutch system; such a theory of

liability would, pursuant to *Cardinal Health*, *Hicks*, and the district court's analysis, require individualized analysis that might defeat predominance.  Instead, Plaintiff's theory is that the allegedly defective clutch is itself the injury, regardless of whether the faulty clutch caused performance issues.  Accordingly, Nissan's argument is unavailing.[8]

## CONCLUSION

Plaintiff's theory of liability—that Nissan's manufacture and concealment of a defective clutch system injured class members at the time of sale—is consistent with his proposed recovery based on the benefit of the bargain.  We conclude that the district court abused its discretion when it denied class certification based on a misconception of Plaintiff's legal theory.  We therefore **REVERSE** the district court's denial of class certification and **REMAND** for further proceedings.

---

[8] Nissan also argues that the district court's denial of class certification is supported by other grounds in the record, but we observe that at least some of these additional contentions—for example, that Plaintiff's "model misperceives the bargain" because Nissan did not promise that the Class Vehicles were free of defects—are merits arguments, and beyond the scope of our review.  *See Stockwell v. City and County of San Francisco*, 749 F.3d 1107, 1113 (9th Cir. 2014) ("Under Rule 23(f), the limitation on consideration of the merits to the relevant class certification questions is of jurisdictional significance.").