NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 9 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MARIE FALCONE, individually and on behalf of all others similarly situated,

Plaintiff - Appellee,

v.

NESTLE USA, INC.,

Defendant - Appellant.

No. 24-7707

D.C. No.
3:19-cv-00723-L-DEB

MEMORANDUM*

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted November 19, 2025
Pasadena, California

Before: CLIFTON, BYBEE, and DE ALBA, Circuit Judges.
Dissent by Judge CLIFTON.

Appellant Nestlé USA, Inc. ("Nestlé") challenges the district court's order

certifying two state-based classes. Appellees allege that Nestlé used deceptive

package labeling, claiming its chocolate products were "sustainably" or

"responsibly" sourced, implying that they were produced free of child labor and

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

deforestation. Namely, Appellees assert false-advertising claims under California's Unfair Competition Law ("UCL") and Consumer Legal Remedies Act ("CLRA"). We review a district court's order certifying a class for abuse of discretion. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (en banc). We have jurisdiction pursuant to 28 U.S.C. § 1292 and Federal Rule of Civil Procedure 23(f). We affirm.

1. The district court did not err in certifying Appellees' injunctive relief class because Marie Falcone, the named plaintiff, has Article III standing. *See Summers v. Easth Island Inst.*, 555 U.S. 488, 493 (2009) (setting forth the standing elements). To establish standing for injunctive relief in a class action, at least one named plaintiff must satisfy the standing requirements. *DZ Rsrv. V. Meta Platforms, Inc.*, 96 F.4th 1223, 1239 (9th Cir. 2024). Here, Falcone repeatedly testified that she loves Nestlé products and that she would like to purchase these products in the future but that she stopped purchasing them when she learned about child labor and environmental damage. Although she described one of Nestlé's current labels as having a "perfect placement," she also testified that she does not trust Nestlé's reporting in its Cocoa Plan. Reviewing Falcone's deposition testimony in full, this is sufficient to confer Article III standing. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th Cir. 2018) (noting that plaintiffs in consumer fraud cases "can satisfy the imminent injury requirement by showing

they will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although [they] would like to." (internal quotation marks omitted)); *see also Olean*, 31 F.4th at 663 (reviewing findings of fact for clear error).  Thus, the district court properly found that Falcone has Article III standing.

2.  The district court did not abuse its discretion in finding that common questions of law and fact predominate over individual inquiries for the damages class.  *See* Fed. R. Civ. P. 23(a)(1), (b)(3); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Nestlé argues that exposure was not met because whether a class member saw the misrepresentation is an individual question that predominates.  Here, all the class members were exposed to the misrepresentation because it was on the products' packaging and, by definition, class members must have bought the products at issue to be part of the class; in labeling fraud cases, this is all that is required.  Thus, exposure is a common question that predominates over individual inquiries.[1]

---

[1]     Nestlé argues that the district court erred in treating exposure as a merits issue.  Nestlé misreads the district court's order.  The district court was not simply rejecting exposure as being a merits question; instead, it was rejecting Nestlé's argument that the sustainability representations were not *material* because they were mostly located on the back-label of the package.  Thus, the district court found that *materiality*, not exposure, was a merits issue.

As to Nestlé's argument that class members lack Article III standing, as Nestlé concedes, we have previously held that the possibility that some class members suffered no injury does not, by itself, defeat class certification.  *See*

Nestlé further argues that misrepresentation cannot be accomplished on a class-wide basis because the sustainability representations vary throughout the 59 different labels at issue. But the variations are slight, and we have found that "variations in messaging are not necessarily fatal to class certification." *See DZ Rsrv.*, 96 F.4th at 1236 ("[D]ifferently worded sales pitches[] and disparate modes of exposure" do not defeat uniformity of representations to meet commonality.). As to Nestlé's argument that the sustainability representations do not have an "objective definition," this argument is unavailing. *See Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 854, 870–71 (9th Cir. 2025) (noting that for CLRA and UCL claims, we "have consistently held that a plaintiff need not establish at the class certification stage that class members share a uniform understanding of the contested term.").

Regarding materiality and reliance, the district court correctly found that these elements of Appellees' consumer fraud claims raised common issues supporting class certification. Because Appellees can prove materiality and reliance with an objective, reasonable consumer standard, we have recognized that both elements of consumer protection laws are "generally susceptible to common

---

*Olean*, 31 F.4th at 669, 680–81. In any event, Appellees' argument that class members would not have spent money on Nestlé's products had they known about the misrepresentations is a "quintessential injury-in-fact." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).

proof." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1034 (9th Cir. 2024). The district court found that materiality, and therefore reliance, can be proved or disproved on a class-wide basis from consumer research and surveys without having to scrutinize materiality as to every single class member. *See Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 481 (2013). Falcone's and Nestlé's evidence on this point underscores this. Lastly, as the district court correctly found, Plaintiffs need not prove materiality at the class certification stage. For Rule 23(b)(3) purposes, the relevant question is not whether Falcone has successfully proven materiality, but rather whether the materiality inquiry is a common question susceptible to common proof that helps to establish predominance. *See Lytle*, 114 F.4th at 1025, 1034–35.

Thus, the district court did not abuse its discretion in finding commonality and predominance to certify the damages class.

3. Finally, the district court did not abuse its discretion in finding that Falcone's full refund theory of liability stems from her theory of deception, and the calculation of the refund is possible on a class-wide basis. Nestlé argues that this theory of liability contravenes *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) and California law. Nestlé's argument is unpersuasive. We have not construed *Comcast* as requiring plaintiffs to provide a class-wide method for calculating damages at the class certification stage, but rather as requiring only that plaintiffs

demonstrate a logical connection between their damages model and their theory of

liability. *See Pulaski & Middleman, LLC v. Google. Inc.*, 802 F.3d 979, 987–88

(collecting cases); *see also Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1183

(9th Cir. 2017), *rev'd on other grounds by Nutraceutical Corp. v. Lambert*, 586

U.S. 188 (2019) (California law "requires only that some reasonable basis of

computation of damages be used, and the damages may be computed even if the

result reached is an approximation." (quoting *Pulaski*, 802 F.3d at 989)). Here,

Falcone alleges that Nestlé misled consumers, in violation of the UCL and CLRA,

by labeling the products at issue with sustainability representations that deceived

them into buying the products, and this caused damage common to the class

members. Her theory is that once class members learn about the

misrepresentation, the value of the products they bought will be worthless or de

minimis. *See Lambert*, 870 F.3d at 1183. Thus, as the district court correctly

found, Falcone's theory of restitution stems from Nestlé's liability-creating actions

and whether the products are worthless is a merits issue not decided at class

certification.[2] *See id.* at 1184 ("Whether [Falcone] could prove damages to a

reasonable certainty on the basis of h[er] full refund model is a question of fact that

---

[2] The district court may want to consider Dr. William Robert Ingersoll's proposal for a price premium (conjoint) damages model as a more appropriate way to measure Falcone's damages. This alternative model can be considered under the rules at an appropriate time. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

should be decided at trial.").

**AFFIRMED.**

*Falcone v. Nestlé USA, Inc.*, 24-7707

CLIFTON, Circuit Judge, dissenting:

My colleagues conclude that "the district court did not abuse its discretion in finding that Plaintiff Marie Falcone's full refund theory of liability stems from her theory of deception, and the calculation of the refund is possible on a class-wide basis." Majority at 5. I disagree. The only damages model offered by Falcone is contrary to fact. Falcone tacitly admits as much. So do my colleagues in the majority. That is too shaky a foundation to support the class certification order entered by the district court in this case. At the class certification stage, Falcone must offer a damages model that is "consistent with [her] liability case" and demonstrates "that damages are susceptible of measurement across the entire class." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). She must also propose a "valid method" and a "workable method" for calculating damages. *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182, 1184 (9th Cir. 2017), *rev'd and remanded on other grounds,* 586 U.S. 188 (2019). She has not done so.

"The False Advertising Law, the Unfair Competition Law, and the CLRA authorize a trial court to grant restitution to private litigants asserting claims under those statutes." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 694 (2006). "The difference between what the plaintiff paid and the value of what the

1

plaintiff received is a proper measure of restitution." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009).

Falcone did not offer a "valid method" of calculating damages on a classwide basis. *Lambert*, 870 F.3d at 1182. Falcone merely contended that a full refund of the purchase price for each class member is appropriate because the products are worthless to consumers who disagree with Nestlé's alleged labor practices. She then proposed that damages be calculated by multiplying the average retail price by the number of units sold. This is not, however, a case where all class members would be entitled to a full refund of the purchase price. Restitution based on a full refund is only warranted if not a single class member derived any benefit from the chocolate products. *See In re Tobacco Cases II*, 240 Cal. App. 4th 779, 795–96 (2015) ("A full refund *may* be available in a UCL case when the plaintiffs prove the product had *no* value to them . . . since the price paid minus the value actually received equals the price paid."); *see also Lambert*, 870 F.3d at 1183 ("The full refund model measures damages by presuming a full refund for each customer, on the basis that the product has no or only a de minimis value.").

Falcone's proposed damages model relies on two premises: (1) the discovery of the alleged misrepresentations regarding sustainability would render the purchased Nestlé chocolate products to become *entirely valueless* to (2) *every*

2

*purchaser* of the chocolates. Both of these are highly implausible and not supported by any evidence offered by Falcone. Indeed, they were contradicted by Falcone's personal acknowledgement that Nestlé products are superior in taste and by her own inability to resist purchasing a Butterfinger bar even after she became aware of the allegations against Nestlé. She bought and paid for the product despite knowing what she contends make the product "valueless" to every purchaser, putting the lie to that allegation. To the extent Falcone attempts to rely on Nestlé's internal surveys indicating that sustainability representations influence consumer purchasing decisions, these documents fall far short of supporting the proposition that every purchaser would find the products valueless upon learning of Nestlé's alleged practices.

During oral argument, Falcone's counsel suggested that she would present expert testimony at the merits stage concerning what percentage of consumers would find the products valueless. That promise adds a critical element that is not consistent with the proposed damages model used to obtain class certification, which was to be calculated simply by multiplying the average retail price by the number of units sold. That damages model rests on the premises that the discovery of the alleged misrepresentations would render the products *entirely valueless* to *every* purchaser of the chocolates. The promise to provide that new expert evidence admits that the model upon which the class certification order was granted needs

adjustment. Class certification is to be based on evidence, not a promise that flaws will somehow be fixed later.

Falcone further admitted the shortcomings of the full refund model in offering an alternative "price premium" damages model. That model was offered to the district court for the first time in her reply memorandum in support of class certification. Because it was introduced on reply, the district court did not consider this model and did not rely upon it when it granted class certification. On appeal, Falcone renewed her proposal and requested permission to file another motion for class certification that relied upon a "price premium" model should this panel find that a full refund is improper. That is the path that we should take.

The majority recognizes the problem. It encourages the district court to consider Falcone's "proposal for a price premium (conjoint) damages model as a more appropriate way to measure Falcone's damages." Majority at 6 n.2.

The acknowledgement by both Falcone and the majority that an alternative damages model may be "more appropriate" is telling. The district court based class certification on the offered damages model and not on a hypothetical alternative that the district court declined to consider. That alternative is based on evidence that has not yet been developed, presented, or briefed. That evidence will presumably come in the form of what Falcone described as "a revised conjoint study proposed by Dr. Ingersoll." It is not before us now, and it was not before the

4

district court when it granted class certification. If Falcone wants to propose the alternative "price premium" model, with evidence to support it as a valid and workable measure of damages, that should be done in a renewed motion for class certification. The current class certification order should not stand.

Rather than deal with the recognized flaws in the damages model upon which the class certification order was based, the majority concludes "whether the products are worthless is a merits issue not decided at class certification." Majority at 6 (citing *Lambert*, 870 F.3d at 1184). But *Lambert* does not authorize punting the issue down the road. It is true that in *Lambert* we held that whether Lambert "could prove damages to a reasonable certainty on the basis of his full refund model is a question of fact that should be decided at trial." *Lambert*, 870 F.3d at 1184. But that was because "Lambert [had] presented evidence that the product at issue was valueless and therefore amenable to full refund treatment" at the class certification stage. *Id*. at 1183. As a result, we noted that "Lambert had shown that his damages model was supportable on evidence that could be introduced at trial." *Id*. at 1184. That showing was not made here. At this stage, Falcone has not presented evidence that the products were valueless to all purchasers and has not demonstrated that her full refund damages model was supportable with evidence that could be introduced at trial. To the contrary, Falcone proposes to develop and offer evidence that

5

departs from her full refund damages model, because it is plain that the full damages model is based on unrealistic premises.

Under *Lambert*, it is not enough for Falcone to merely allege that her theory of restitution stems from Nestlé's liability-creating actions. She must proffer evidence to support "a workable model." *Id*. The full refund model is not workable or valid. The suggestions by Falcone and the majority that an alternative price premium model should be considered admit as much. We should vacate the existing class certification order and remand for further proceedings.

I respectfully dissent.